UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENEE PAYNE,<br><br>            Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>            Defendant. | 1:12-cv-2064 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

'

## INTRODUCTION

Plaintiff Renee Payne ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income payments under Title XVI of the Social Security Act. The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge. *See* Docs. 9 & 10.

///

## SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

Plaintiff filed a Title XVI application for supplemental security income benefits on May 15, 2009, alleging disability beginning on January 1, 2008.[3]  AR 131.  Her claim was denied initially on September 15, 2009, and upon reconsideration on February 19, 2010.[4]  AR 76, 84. Subsequently, on May 24, 2011, an administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim.  AR 25.  Plaintiff was represented by an attorney and testified at the hearing; a vocational expert also appeared and testified.  AR 27-48.  On June 6, 2011, the ALJ found that Plaintiff was not disabled.  AR 57-70.  On October 17, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision.  AR 1-6.  Plaintiff then commenced this action in District Court.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion."  *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id*.

---

[3] SSI benefits are payable from the month following the month in which the benefits application was filed. *See* 20 C.F.R. § 416.335.

[4] Plaintiff had previously applied for disability benefits as well, but there was no basis to reopen the prior denials. AR 60.

///

**ISSUES PRESENTED FOR REVIEW**

Plaintiff argues that the ALJ improperly evaluated the medical opinion evidence to find that Plaintiff was capable of performing unskilled light work.  Plaintiff further argues that the case should be remanded for benefits because the ALJ's error was harmful to Plaintiff in terms of the ultimate decision of non-disability.  The Commissioner responds that the ALJ properly considered all the evidence regarding Plaintiff's mental and physical impairments.

**DISCUSSION**

**1. Applicable Law**

The opinions of treating physicians, examining physicians, and non-examining physicians are entitled to varying weight in disability determinations. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996).  Generally, the opinion of a treating physician is afforded the greatest weight. *Id*.  An examining physician's opinion is, in turn, given more weight than the opinion of a non-examining physician.  20 C.F.R. § 404.1527(d)(2); *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984).  However, "[w]hen there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956–957 (9th Cir. 2002); *also see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

A treating physician's opinion "is not necessarily conclusive as to either the physical condition [at issue] or the ultimate issue of disability." *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999); *also see Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).  Nonetheless, where the treating physician's opinion is not contradicted by another doctor, the ALJ may dismiss it only for "clear and convincing reasons." *Magallanes*, 881 F.2d at 751; *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991).  If the treating doctor's opinion is

contradicted by another doctor, the ALJ must give "specific and legitimate" reasons, supported by substantial evidence in the record, for discounting it. *Lester*, 81 F.3d at 830; *see also Thomas v. Barnhart*, 278 F.3d 947, 958–59 (9th Cir. 2002); *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Similarly, the uncontradicted opinion of an examining physician may be rejected only for "clear and convincing" reasons, *Pitzer*, 908 F.2d at 506, and, if it is contradicted by another doctor, it can be rejected only on the basis of specific and legitimate reasons that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

As for the role of nonexamining, nontreating medical experts, here again "[a]n ALJ may reject the testimony of an examining [or treating physician] in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995); *see also Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995). The Ninth Circuit has "consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based *in part* on the testimony of a nontreating, nonexamining medical advisor." *Morgan*, 169 F.3d at 602 (emphasis in original); *also see Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989) (upholding the ALJ's rejection of the opinion of a treating physician because "the ALJ did not rely on [the nonexamining physician's] testimony *alone*" to do so) (emphasis in original); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995) (the ALJ rejected the opinion of the examining psychologist based on the opinion of a nonexamining, nontreating medical advisor as well as the fact, among other things, that the results of psychological testing conducted by the examining psychologist were suspect, as a product of the claimant's drug use); *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). In sum, "[t]he opinions of non-treating or non-examining physicians may … serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278

F.3d 947, 957 (9th Cir. 2002); *also see Morgan*, 169 F.3d at 600.

Finally, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957; *also see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

### 1. Analysis

#### (a) The ALJ Properly Evaluated the Medical Evidence

##### (i) *Dr. Marian Doe*

Plaintiff argues that the ALJ improperly discounted a form filled out by Plaintiff's primary care physician, Dr. Marian Doe of Clinica Sierra Vista. The form in question was a "Medical Evaluation for In-Home Supportive Services Recipient," intended to help Plaintiff obtain in-home care services from In-Home Supportive Services, Fresno County Department of Employment and Temporary Assistance ("IHSS"). AR 372. Dr. Doe completed the form on January 21, 2011, noting that Plaintiff was permanently disabled based on a diagnosis of Alzheimer's disease, and needed a companion with her at all times.[5] AR 272-273. The ALJ observed that Dr. Doe's notations on the "fill-in-the-blanks/check-the-box" form were "vague and ambiguous" in terms of delineating Plaintiff's work-related functional limitations. AR 63. Specifically, the ALJ stated that "Dr. Doe's statement does not specify what the claimant can or cannot do in work-related terms," and as such, cannot be given controlling weight. AR 63; *see* 20 C.F.R. § 416.927(c)(2). The ALJ also noted that an opinion regarding the ultimate issue of disability is not binding on the Social Security Administration. AR 63; *see* 20 C.F.R. § 416.927(d)(1) (a medical source statement that a claimant is disabled does not mean that the Social Security Administration will find him or her disabled); 20 C.F.R. § 416.904 (a determination by another agency that a claimant is disabled is not binding on the Social Security Administration).

---

[5] Dr. Doe had been seeing Plaintiff as a patient since September 2010. AR 411.

While 20 C.F.R. § 416.927(b) requires an ALJ to consider medical opinions, the IHSS form filled out by Dr. Doe is not a medical opinion but, rather, a disability opinion. "In disability benefits cases, physicians typically provide two types of opinions: medical opinions that speak to the nature and extent of a claimant's limitations, and opinions concerning the ultimate issue of disability, i.e., opinions about whether a claimant is capable of any work, given her or his limitations." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (in disability benefits case "physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability—the claimant's ability to perform work"). The IHSS form is not a medical opinion, but rather an opinion on the ultimate issue of disability.[6] *See Martinez v. Astrue*, 261 F. App'x 33, 35 (9th Cir. 2007).

Under applicable Social Security regulations and rulings, a treating physician's disability opinion is not entitled to controlling weight or any special significance, because the ultimate issue of disability is for the Commissioner to make, taking into account a variety of factors. 20 C.F.R. § 416.927(d)(3) (opinion sources on issues reserved to the Commissioner are not given "any special significance"); Soc. Sec. Ruling (SSR) 96–5p, 1996 WL 374183, at *1, *2, *5 (July 2, 1996) (the "adjudicator is precluded from giving any special significance" to an opinion from a treating source on issues reserved to the Commissioner); *Martinez v. Astrue*, 261 F. App'x at 35 (a disability opinion is "not accorded the weight of a medical opinion" because it "is an opinion about an issue reserved to the Commissioner"); *Ram v. Astrue*, WL 6790197, *8 (C.D. Cal. Nov. 30, 2012) ("a treating physician's opinion regarding the ultimate issue of disability is not entitled to any special weight"); *accord Acosta v. Astrue*, 2010 WL 1544113, *3 (C.D. Cal. Apr. 6, 2010); *see also McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011) ("[a] disability is an administrative

---

[6] 20 C.F.R. 416.927(a)(2) defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." *See also* 20 C.F.R. §§ 416.913(b) and (e).

determination of how an impairment, in relation to education, age, technological, economic and social factors, affects ability to engage in gainful activity").

In addition, the ALJ noted that the diagnosis of Alzheimer's Disease, reflected on the IHSS form completed by Dr. Doe, was made by an unknown provider at Fresno Shields Medical Center on the basis of only a Mini-Mental State Examination ("MMSE") evidently conducted on December 30, 2009.[7]  AR 63; 317.  The ALJ explained that in light of Plaintiff's credibility issues and the significant evidence of malingering in the record, he gave little weight to this diagnosis of Alzheimer's Disease.  AR 63.  (In his decision, the ALJ specifically discounted Plaintiff's credibility and recounted the evidence of malingering in support of his credibility determination, which Plaintiff does not challenge.  AR 65, 67.)  The ALJ further noted that Plaintiff had a negative brain MRI study in April 2010,  AR 63, 420, and observed that Dr. Zoltan Moscary, MD, opined in February 2011 that the claimant did not have dementia, but rather a mild cognitive disorder and suspected anxiety and depression.  AR 63; 442-443.  Given these facts, the ALJ also gave little weight to the opinion of Dr. Paul Snider, with Fresno County Mental Health, who adopted Plaintiff's diagnosis of dementia based on Plaintiff's report that she was diagnosed with dementia by Drs. Orme and Doe.[8]  AR 387-388.

In sum, the ALJ properly discounted Dr. Doe's statement regarding Plaintiff's need for in-home support services on account of a permanent disability related to her diagnosis of

---

[7] The record includes additional specific evidence contradicting the Plaintiff's diagnosis of Alzheimer's disease.  For example, Plaintiff's primary care physician at Clinica Sierra Vista sent her to be evaluated by a neurologist regarding her reported dementia in 2011.  AR 362-367.  On March 1, 2011, her physician noted that she was evaluated by a neurologist, who also gave Plaintiff an MMSE exam.  AR 363.  On March 25, 2011, her physician noted that there was "[n]o dementia per neurology; d/c [i.e., discontinue] Aricept," a drug for Alzheimer's Disease and Dementia.  Plaintiff had already stopped Namenda, another drug for Alzheimer's Disease, several months previously, and her physician at Clinica Sierra Vista did not re-start Plaintiff on Namenda.  AR 442; 362-368.

[8] Dr. Snider also diagnosed Plaintiff with dysthymic disorder.  AR 387.  Dr. Snider noted that Plaintiff's "primary diagnosis is Depression and not Dementia as indicated in my initial note."  AR 338.

7

Alzheimer's Disease.[9]

### (ii) Dr. Zoltan Moscary

Plaintiff next argues that "[t]he ALJ rejected the opinion of Dr. Moscary, an examining physician," according it "little weight." Doc. 15, Pltff.'s Op. Br., at 13; AR 63. Plaintiff appears to have misread the ALJ's decision in this regard, as the ALJ did not state that he accorded Dr. Moscary's opinion little weight. AR 63. The ALJ in fact relied on Dr. Moscary's assessment that Plaintiff's reported memory loss was not due to dementia, but rather due to depressive/anxiety disorder or mild cognitive impairment, so stated. AR 63, 442-443. Dr. Moscary provisionally diagnosed Plaintiff with "mild cognitive impairment, so stated," subject to neuropsychological testing for a confirmed diagnosis. AR 442-443. Dr. Moscary also concluded that Plaintiff could alternatively be suffering from depression/anxiety. AR 442-443. While Dr. Moscary examined Plaintiff on a one-time basis, and made provisional diagnoses regarding her mental impairment, he did not assess any functional limitations for Plaintiff on account of her mental impairment.

---

[9] Plaintiff does not specifically challenge the ALJ's rejection of another Questionnaire completed by Dr. Doe in April 2011. AR 68; 410-411. In this Questionnaire, Dr. Doe opined that the Plaintiff could lift and carry less than 10 pounds both frequently and occasionally; that she could stand, walk and sit less than 2 hours in an 8-hour workday; and that she needed to lie down or elevate her legs more than 30 minutes in an 8-hour workday. Dr. Doe further stated that the Plaintiff could reach, handle, feel, push, pull and grasp for less than 30 minutes in an 8-hour workday. Dr. Doe stated that Plaintiff's limitations were based on degenerative joint disease of her shoulders, back and knees. The ALJ noted that he gave Dr. Doe's findings on the Questionnaire little weight because the "objective diagnostic testing indicates minimal or mild findings that do not support the less than sedentary residual functional capacity assessment." AR 68. The ALJ further noted that Dr. Doe's conclusion lacked "all signs, symptoms, or other appropriate basis, and is not supported by treatment records or other evidence of record. Although Dr. Doe may be associated with Clinica Sierra Vista, all of the treating doctors signatures' [on treatment records from Clinica Sierra Vista] are illegible." AR 68. The ALJ pointed to various diagnostic studies that confirmed mild degenerative disease in various joints. AR 66, 430; 431; 374-384. The ALJ also gave substantial weight to the contradictory opinions of non-examining state agency doctors who determined that Plaintiff was capable of light work; correctly pointed out that Dr. Doe does not specifically identify clinical and diagnostic findings or signs and symptoms to support and explain her conclusions; and noted that there are no supporting treatment notes in the record that can be definitively ascribed to Dr. Doe. AR 410-411. Finally, even general records from Clinica Sierra Vista or Plaintiff's other health care providers do not support Dr. Doe's findings, as no functional restrictions are reflected therein. Therefore, the ALJ reasons for rejecting this questionnaire are specific and legitimate, and based on substantial evidence in the record. *Also see Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) ("[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings. *Thomas*, 278 F.3d at 957; *also see Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992).

*See Trac v. Colvin*, 2013 WL 1498908 (C.D. Cal. April 9, 2013) ("a mere diagnosis of an impairment is not enough to establish disability"); *also see Young v. Sullivan*, 911 F.2d 180, 183-184 (9th Cir. 1990). Based on all the evidence in the record, including the Psychiatric Review Technique Form (PRTF) completed by the state agency psychological consultant, the opinion of the psychological consultative examiner, Plaintiff's negative MRI brain study, and the evidence of malingering, the ALJ properly determined that Plaintiff's mental impairments would have no more than a slight impact on Plaintiff's ability to perform basic work activities, and were, accordingly, nonsevere.[10]  *See* 20 C.F.R. § 416.921.

### (iii)  *Dr. Swanson*

Plaintiff next challenges the ALJ's assessment of the opinion of the psychological consultative examiner, Dr. Swanson. The ALJ credited Dr. Swanson's opinion to the extent it was consistent with a nonsevere mental impairment. AR 63. Dr. Swanson diagnosed the Plaintiff with Cocaine dependence in remission, R/O opioid abuse, R/O malingering, and antisocial personality disorder. AR 333. Dr. Swanson noted that Plaintiff's "attitude during the assessment was very friendly but she appeared motivated to make a case for disability," and "[o]n the psychometrics she appeared intentionally to perform poorly." AR 331. Dr. Swanson described in detail a battery of tests he administered to assess Plaintiff's psychological state and processes; intellectual function; memory function; visual-motor integration skills; and visual, conceptual, and visuomotor tracking. AR 332-333. Dr. Swanson noted, with respect to every test, that Plaintiff appeared intentionally to perform poorly; he further noted that her effort was careless and invalidating, and that certain results were generally indicative of malingering. AR 332-333.

---

[10] On May 26, 2009, a Disability Determination Services Analyst spoke to Plaintiff about her possible memory loss. AR 179. The Analyst noted as follows: "talked to claimant reg. memory loss. Clmt states that she only forgets little things like when she has a drs apt, or where she left something in the house. Nothing of significance, just the every-day common things that people forget. Clmt states that her disability is physical. Main problems are her back and knees." AR 179. The ALJ also noted in his decision that at her hearing, Plaintiff "testified without any noticeable loss of memory of past or present events or facts for well over 30 minutes. In addition, she stayed focused throughout the nearly 45 minute hearing." AR 67.

Dr. Swanson noted that Plaintiff has "not been hospitalized in a psychiatric setting and there is no indication of any serious psychopathological disturbance." AR 334. Dr. Swanson observed, "[t]here is no genuine reason to believe that her mental or emotional functioning falls sincerely outside normal limits." AR 334.

Dr. Swanson concluded that in terms of her mental functioning, Plaintiff would be able to perform basic work activities:

> Renee is judged to be able to maintain concentration or relate appropriately to others in a job setting. She would be able to handle funds in her own best interests. She is expected to understand, carry out, and remember simple instructions. She is judged as able to respond appropriately to usual work situations, such as attendance, safety, and the like. Changes in routine would not be excessively problematic for her.

AR 334; 335; 20 C.F.R. § 416.921 (basic work activities mean the abilities and aptitudes necessary to do most jobs, including understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting). The ALJ stated that he credited Dr. Swanson's opinion except for the "simple, repetitive tasks limitation," which "is not supported due to the invalid testing." AR 63. Plaintiff challenges the ALJ's rejection of the "simple, repetitive tasks limitation" imposed by Dr. Swanson. The Court was not able to discern any such limitation in Dr. Swanson's opinion; his finding that "she is expected to understand, carry out, and remember simple instructions" does not appear to be a limitation but rather indicates that she was capable of performing basic work activities. *See* AR 335; 20 C.F.R. § 416.921. To the extent Dr. Swanson's opinion imposed any simple, repetitive tasks limitation, it would be undercut by his own conclusion that "[t]here is no genuine reason to believe that [Plaintiff's mental or emotional functioning falls sincerely outside normal limits." AR 63. Furthermore, the ALJ's reason for rejecting any such limitation, i.e., that Dr. Swanson's testing

10

was invalidated, is specific and legitimate and supported by substantial record evidence.[11]

**(iv)    Dr. Snider**

Plaintiff argues that the ALJ erred in not discussing the opinion of Dr. Snider in evaluating the severity of Plaintiff's mental impairment. Doc. 15, Pltff.'s Op. Br., at 15.

Contrary to Plaintiff's assertion, the ALJ specifically addressed Dr. Snider's opinions and noted that he gave them little weight. AR 63. The record contains progress notes for two consultations Plaintiff had with Dr. Snider, on January 18, 2011—which was Patient's first visit with Dr. Snider—and February 15, 2011. AR 385. Dr. Snider also filled out a Mental Disorder Questionnaire for Evaluation of Ability to Work on May 17, 2011, which was Plaintiff's last visit with Dr. Snider.[12] AR 440. Dr. Snider adopted Plaintiff's reported diagnosis of dementia and diagnosed her with dysthymic disorder. Any functional limitations assessed by Dr. Snider appear to be largely based on Plaintiff's reported diagnosis of dementia. AR 440-441. The ALJ rejected the diagnosis of Alzheimer's Disease that Plaintiff received (see above) based on a negative MRI study of her brain conducted in April 2010, Dr. Moscary's opinion that Plaintiff did not have dementia, Dr. Swanson's opinion that Plaintiff was malingering and that her mental functioning was within normal limits, and, finally, the unchallenged credibility issues and other evidence of malingering discussed in the ALJ's opinion. AR 63. The ALJ stated that he discounted Dr. Snider's opinion for the same reasons that he invalidated the diagnosis of Alzheimer's Disease, because Dr. Snider's opinion was inextricably linked to this diagnosis. AR 63. The ALJ gave specific and legitimate reasons, based on substantial evidence in the record, for discounting Dr. Snider's opinion. Also, the ALJ properly discounted Plaintiff's subjective symptom testimony,

---

[11] As the ALJ properly determined, such a limitation was not warranted in light of Dr. Swanson's finding that Plaintiff intentionally performed poorly on the administered tests, thereby invalidating the results. AR 63. The ALJ also gave "great weight" to opinion of the state agency reviewing psychologist, Dr. Nadine Kravatz, and state agency reviewing physician, Dr. C. Lopez, who both found Plaintiff's mental impairment to be nonsevere. AR 63; 366; 349. The ALJ noted that the opinions of the state agency reviewing physicians were more consistent with the record as whole, especially given the fact that there are limited treatment records for Plaintiff's mental impairment. AR 63.

[12] Plaintiff's ALJ hearing occurred on May 24, 2011. AR 24.

and therefore did not err in disregarding Dr. Snider's opinion which was premised to a large extent upon the Plaintiff's own accounts of her symptoms and limitations.  *See e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 602 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

**(v)  *Dr. Goldstein***

Plaintiff argues that the ALJ erred in not discussing the opinion of Dr. Estelle Goldstein in evaluating the severity of Plaintiff's mental impairment.  Doc. 15, Pltff.'s Op. Br., at 15.  Dr. Goldstein saw Plaintiff on two occasions—November 17, 2010 and December 6, 2010—at Urgent Care/Wellness, Fresno County Department of Behavioral Health.  AR 391; 393-394.  On her first visit, Plaintiff reported her diagnosis of dementia and indicated that she wanted help for the stress caused by the diagnosis.  AR 393.  Dr. Goldstein, however, concluded "[t]he patient may or may not be demented" and could be "having transient delirium from her medications."  AR 393.  Dr. Goldstein and her staff questioned whether Plaintiff was sincere or malingering.  AR 393.  Dr. Goldstein also noted, regarding Plaintiff's use of medications: "We are not certain she is taking anything, really."  AR 393.  Plaintiff was accompanied by two children during her consultation with Goldstein.  Dr. Goldstein noted that she and her staff were "concerned about the welfare of these children and made a report to CPS."  AR 393.  In her treatment notes for Plaintiff's second visit, Dr. Goldstein notes that Plaintiff's initial concern was about "who called CPS on her."

Dr. Goldstein diagnosed Plaintiff with major depression and "possible dementia of Alzheimer's type vs. malingering."  AR 394.  On both November 17, 2010 and December 6, 2010, Dr. Goldstein conducted mental status examinations and obtained normal results: Plaintiff's motor activity, cognition, speech, thought content, mood, affective range, insight and judgment

were all normal; she was alert and oriented; her thought processes were organized; and her intelligence was average.  AR 391, 394.  Dr. Goldstein did not assess any functional limitations. AR 391, 394.

The ALJ referenced Dr. Goldstein's treatment notes in his decision—though not by name—indicating that he considered them.  AR 63 ("Various staff with Fresno County Mental Health also had suspicions that the claimant was malingering.").  Dr. Goldstein saw Plaintiff on merely two occasions, during which she diagnosed Plaintiff with major depression; conducted mental status examinations with normal results; and did not assess any functional limitations.  Her diagnosis, without more, does not impact the ALJ's analysis.  *See Trac v. Colvin*, 2013 WL 1498908 (C.D. Cal. April 9, 2013) ("a mere diagnosis of an impairment is not enough to establish disability"); *also see Young v. Sullivan*, 911 F.2d 180, 183-184 (9th Cir. 1990).  Moreover, the ALJ is not required to address all of the evidence presented and need not discuss evidence, such as Dr. Goldstein's treatment notes, that is neither significant nor probative.  *See, e.g., Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984).

**(vi)   *Dr. Rustom Damania***

Plaintiff next argues that the ALJ erred in giving "little weight" to the opinion of Dr. Rustom Damania.  Dr. Damania performed Plaintiff's internal-medicine consultative examination.  AR 66; 323-328.  Plaintiff complained of joint pain, low back pain, diabetes, pain and numbness in her lower extremities, renal insufficiency, hypertension and hyperlipidemia.  AR 323.  Dr. Damania found that Plaintiff was in no acute distress; a straight-leg raising test was negative; her strength was 5/5 for both upper and lower extremities; her range of motion was normal in all joints except for her back; but her sensory system was diminished on her lower extremities.  AR 326-327.  Dr. Damania determined that Plaintiff did not need any assistive device for ambulation.  AR 68, 327.  Dr. Damania diagnosed her with diabetes mellitus,

13

hypertension, peripheral neuropathy subjectively and objectively, and renal insufficiency.  AR 327.

Dr. Damania opined that Plaintiff could lift and carry less than 10 pounds both frequently and occasionally, and she could stand and walk for two to four hours and sit for four hours out of an 8-hour workday, and had some postural limitations.  AR 327-328.  The ALJ discussed the medical record evidence in detail, including Dr. Damania's examination findings as well as the objective diagnostic testing reflected in the record.[13]  The ALJ also analyzed the evidence regarding Plaintiff's credibility in detail, and determined that her subjective complaints regarding the disabling effects of her impairments were largely not credible.  Plaintiff has not challenged the ALJ's credibility finding.  The ALJ concluded that he gave "little weight" to Dr. Damania's opinion because it was too restrictive based on the objective examination findings and diagnostic test results.  AR 68.  The ALJ noted that diagnostic studies of various joints [lumbar spine, thoracic spine, both knees, and both feet] confirm only "mild degenerative disease."  AR 66.  The ALJ further specified that x-rays of her knees in February 2009 indicated early medial compartment joint space narrowing and x-rays of the lumbar region were unremarkable; similarly a thoracic spine MRI in May 2009 was normal.  The ALJ determined that the opinion of the state agency medical advisors Drs. Pong and Lopez, were more "internally consistent as well as consistent with the record as a whole."  AR 68.  The ALJ noted that the limitations assessed by the state agency medical advisors "are well supported with specific references to medical evidence" and "there is no objective evidence contradicting these findings."  AR 68.  Therefore, the ALJ gave these opinions substantial weight.  AR 68.

Since Dr. Damania's opinion was contradicted by the opinions of Dr. Pong and Dr. Lopez, the ALJ could properly reject it by providing specific and legitimate reasons that are supported by

---

[13] As discussed in Note 9 above, the ALJ addressed and rejected an opinion by Dr. Marian Doe stating that Plaintiff could stand/walk and sit for less than 2 hours respectively in an 8-hour workday.  AR 68; 410-411.

substantial evidence. Here the ALJ cited the contradictory opinions of Dr. Pong and Lopez, which he explained were more consistent internally, better supported by the objective evidence as well as the record as whole, and not contradicted by any credible evidence. AR 68. He also relied on x-ray and MRI reports with mild findings for the knees, back, left shoulder and feet, AR 374-384, 430-431, as well as Dr. Damania's examination findings, which showed diminished sensation in the legs but normal muscle strength in all extremities (5/5) and normal range of motion for all joints except the back. AR 66; 325-327. The ALJ gave specific and legitimate reasons, based on substantial evidence in the record, for rejecting Dr. Damania's opinion.

**(vii)** *Dr. Kravatz and Dr. Pong*

Finally, Plaintiff challenges the ALJ's reliance on the opinions of state agency medical consultants, Dr. Nadine Kravatz and Dr. D. Pong. Doc. 15, Pltff.'s Op. Br., at 21-23.

Dr. Kravatz completed the Psychiatric Review Technique form and opined that Plaintiff's mental impairment was nonsevere. Plaintiff argues that the ALJ's reliance on Dr. Kravatz's opinion was improper because Dr. Kravatz did not consider the opinions of Drs. Goldstein and Dr. Snider. However, since the ALJ properly discounted Dr. Snider's conclusions, and Dr. Goldstein merely diagnosed Plaintiff with depression but did not assess any functional limitations, the progress notes and findings of Drs. Snider and Goldstein would not impact the ALJ's finding that Plaintiff's mental impairments of depression, dementia, and mild cognitive disorder were nonsevere. Dr. Goldstein, moreover, questioned Plaintiff's sincerity and her staff suspected Plaintiff of malingering. AR 393. Dr. Goldstein's mental status examinations of Plaintiff also yielded entirely normal results, indicating that her diagnosis was based on Plaintiff's reported symptoms, which had been largely discredited by the ALJ. AR 391; 393.

The severity regulation requires a claimant to show that she has an impairment or combination of impairments which "significantly limit[s]" the "abilities and aptitudes necessary

to do most jobs." 20 CFR §§ 404.1521, 416.921; *also see* SSR 85-28; *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity"). Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.912; *Bowen*, 482 U.S. at 146, *Casey v. Shalala*, 999 F.2d 542, 542 (9th Cir. 1993); 42 U.S.C. § 423(d)(5)(A) (a claimant will not be considered to be under a disability unless he or she furnishes medical and other evidence of the existence thereof); 20 C.F.R. § 416.912(c) ("[a claimant] must provide evidence ... showing how [the alleged] impairment(s) affects ... [his or her] functioning"). Here the record does not reveal requisite functional limitations on account of Plaintiff's mental impairments, hence the ALJ properly determined that Plaintiff's mental impairment was nonsevere. The ALJ properly discounted Dr. Snider's conclusions and Dr. Goldstein assessed no functional limitations.

The ALJ's determination that Plaintiff's mental impairments were nonsevere was based on Dr. Kravatz's opinion as well as the opinion of Dr. Swanson, the psychological consultative examiner. Dr. Swanson determined that Plaintiff's mental and emotional functioning were within normal limits. AR 63. Dr. Kravatz found mild limitations in the first three functional areas required to be assessed and no episodes of decompensation on account of Plaintiff's mental impairments. AR 64; 20 C.F.R. § 416.920a(d)(1). Further, as discussed above, the ALJ properly rejected Plaintiff's diagnosis of dementia from Alzheimer's disease. AR 63. As for Plaintiff's diagnosis of mild cognitive disorder, Dr. Moscary made a provisional diagnosis subject to further neuropsychological testing and did not assess any functional limitations on account of it. AR

442-443.

Finally, the ALJ credited a negative MRI study of Plaintiff's brain and significant evidence of malingering noted by Drs. Swanson and Goldstein, among others. Other than a Mental Disorder Questionnaire completed by Dr. Snider which was properly discounted by the ALJ, the record does not reflect additional functional limitations on account of Plaintiff's mental impairments. Plaintiff argues that Dr. Swanson restricted Plaintiff to simple, repetitive tasks, but the Court did not discern this limitation in Dr. Swanson's opinion; moreover, as discussed above, to the extent such a limitation exists in Dr. Swanson's opinion, the ALJ properly rejected it.

Given the ALJ's detailed analysis of the medical record and the lack of evidence of any functional limitations arising from Plaintiff's mental impairments, the ALJ properly found these to be non-severe. The ALJ's assessment that Plaintiff's medically-determinable mental impairments of depression, dementia and mild cognitive disorder, considered singly and in combination, are nonsevere, is free of legal error and is supported by substantial evidence in the record as a whole. AR 63.

With regard to Dr. Pong, Plaintiff argues that the ALJ improperly relied on Dr. Pong's opinion in light of the contradictory opinions of Drs. Doe and Damania. However, as discussed above, the ALJ properly rejected the opinions of Drs. Doe and Damania. The ALJ found that Dr. Pong's opinion was more consistent with the objective medical evidence as well as the record as a whole. Furthermore, in making his residual functional capacity determination, the ALJ relied on the opinion of Dr. Lopez, x-ray and MRI tests with mild findings with regard to Plaintiff's knees, back, left shoulder and feet, and objective examination findings made by Dr. Damania, in addition to the opinion of Dr. Pong. The ALJ's determination is free of legal error and supported by substantial evidence in the record.

///

///

**CONCLUSION**

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole. Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security. The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn Colvin, the Acting Commissioner of Social Security, and against Plaintiff Renee Payne.

IT IS SO ORDERED.

Dated:   **March 31, 2014**                    **/s/ Gary S. Austin**
                                               UNITED STATES MAGISTRATE JUDGE